IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 20, 2000 Session

## STATE OF TENNESSEE v. JAMES D. BRAZELTON

**Appeal as of Right from the Criminal Court for Davidson County**
**No. 98-D-2980     Cheryl Blackburn, Judge**

---

### No. M1999-02477-CCA-R3-CD - Filed November 17, 2000

---

The appellant, James D. Brazelton, was convicted by a jury in the Davidson County Criminal Court of one count of possession of marijuana, over 10 pounds but less than 70 pounds, with the intent to deliver, a class D felony. The trial court sentenced the appellant, as a Range II offender, to seven years incarceration in the Tennessee Department of Correction. The appellant raises the following issues for our review: (1) whether the jury's verdict was supported by the evidence; and (2) whether the sentence imposed by the trial court was excessive. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES, and JOE G. RILEY, JJ., joined.

John E. Rodgers, Jr., for the appellant, James D. Brazelton.

Paul G. Summers, Attorney General and Reporter, Marvin E. Clements, Jr., Assistant Attorney General, John Zimmerman, Assistant District Attorney General, and Ana Escobar, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Factual Background

On August 28, 1998, members of the Metro Police Force and the Drug Enforcement Agency set up surveillance on the Nashville Airport, pursuant to a tip from Special Agent Kyle Scott in San Diego, California, to watch a suspicious traveler named John Thomas. Thomas had attracted the attention of San Diego agents because he possessed some of the "courier characteristics" of individuals carrying narcotics. For example, agents in San Diego considered Thomas to be suspicious because he had purchased a frequent flyer ticket from Karen Waller and changed the

name on the ticket the day he arrived at the counter.[1]  Additionally, Thomas arrived at the last minute to board his plane.  Furthermore, the phone number Thomas had given the airline was disconnected.

Agents Ron Riddle, Ricky Stewart and Mike Woodham were among the officers in Nashville conducting the surveillance.  They observed the appellant, James D. Brazelton, and his half-brother, William Jones, milling about the waiting area where Thomas would exit from the plane. Jones and the appellant continuously checked to see if they were being watched.  When Thomas deplaned, the appellant and Jones approached him and the men exchanged "high fives."  The men talked and appeared happy to see each other.  Together, they walked to the baggage claim.

Agent Riddle proceeded to the secured area where airport employees load the luggage onto the baggage claim conveyor belt.  Using luggage tag numbers obtained from Agent Scott, he located Thomas' bags.  Thomas' luggage consisted of two large, hard-sided suitcases and one smaller flight attendant bag.  Agent Riddle detected a strong odor of marijuana and dryer sheets emanating from the two hard-sided cases.  He called in a drug dog, and the dog indicated that both of the hard-sided cases contained narcotics.  Agent Riddle entered the main baggage claim area, and signaled to the other agents present that drugs were detected in Thomas' luggage.  The agents continued to watch the three suspects.

When the conveyor belt for the baggage started, Thomas positioned himself beside the initial opening for the conveyor belt.  Jones stood further down the conveyor belt.  The appellant walked to the telephones located approximately 45 yards away.  Police observed the appellant pick up the telephone, but he did not deposit any money or dial a telephone number.  Police testified that the appellant began to examine the area in what they termed "counter-surveillance", a technique employed by the police when they want to blend in with the crowd.  Additionally, Agent Riddle testified that the appellant watched for the luggage.

Thomas indicated to Jones to pick up the flight bag.  Thomas himself picked up the two hard-sided cases containing the marijuana.  At this point, the agents moved in.  Agent Riddle approached Thomas, identified himself, and asked Thomas for identification.  Thomas produced his identification card, which stated that he was from San Diego.  Agent Riddle then asked if the luggage belonged to Thomas, to which Thomas replied yes, but added that an unknown woman had packed his bags.  Agent Riddle considered this answer to be suspicious, because airline check-in personnel routinely ask passengers if they packed their own bags.  At that point, Agent Riddle told Thomas not to lie, but to tell him if the luggage contained narcotics.  Thomas admitted that the two suitcases contained drugs.  Agent Riddle asked Thomas to open the suitcases and Thomas voluntarily did so.

---

[1] Agent Riddle testified at trial that, instead of paying for airline tickets in cash, current drug couriers often purchase frequent flyer coupons that corporations advertise in the newspaper.  The courier will then make the plane reservations using the name on the coupon.  Subsequently, the courier will arrive at the airport at the last minute and change the name on the ticket.  According to Agent Riddle, this cuts down on the time the authorities have to check the references given by the passengers.

The two suitcases contained a total of twenty-four bricks of marijuana. Agent Riddle stated that the marijuana in the suitcases had a street value of approximately $120,000.

At the same time Agent Riddle approached Thomas, Agent Stewart began to question Jones. Jones stated that he "came to the airport to pick up dude [Thomas.]" Additionally, he stated that he did not know why he came to Nashville from his home in Indiana to pick up Thomas. Agent Stewart testified that Jones and the appellant came to the airport in a rental car.

Simultaneously, Agent Woodham approached the appellant. Upon request, the appellant produced photo identification which stated that his address was in Indiana. Later, police learned that the appellant actually lived in San Diego with his wife and two daughters. The appellant claimed that he did not know the other two suspects and that he did not understand why he had been stopped by the police. However, police discovered that Jones is the appellant's half-brother. Additionally, the police learned that the appellant had rented the car that he and Jones drove to the airport. The police found the rental agreement, made out in the name of Thurman Carey, among the appellant's personal belongings. Furthermore, the police found the keys to the rental car on the appellant's person. The appellant also stated that he was in Tennessee because he was a truck driver and J.J. Carter had promised him a job. However, Sheila Dycus, an employee of John Carter's Worldwide Moving, formerly J.J. Carter & Son, testified that J.J. Carter had been deceased for more than a decade and that she could find no record that the appellant had applied for employment with the company.

A jury in the Davidson County Criminal Court convicted the appellant of one count of possession of marijuana, over 10 pounds but less than 70 pounds, with the intent to deliver. The trial court sentenced the appellant, as a Range II offender, to seven years incarceration in the Tennessee Department of Correction. The appellant raises the following issues for our review: (1) whether the jury's verdict was supported by the evidence; and (2) whether the sentence imposed by the trial court was excessive.

A. Sufficiency of the Evidence

The appellant argues that the jury's verdict was supported by insufficient evidence. We disagree. Upon an appellant's challenge to the sufficiency of the evidence, this court must determine if any "reasonable trier of fact" could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e). This analysis applies to any guilty verdict, whether based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990). However, if circumstantial evidence alone supports the conviction, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the [appellant]." State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971).

Additionally, the trier of fact, and not the appellate courts, resolves all questions concerning witness credibility and the weight and value to be given the evidence, as well as all

factual issues raised by the evidence. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990). Accordingly, this court will not reweigh or reevaluate the evidence presented at trial. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, because the jury's verdict replaces the presumption of the appellant's innocence with a presumption of the appellant's guilt, the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Furthermore, on appeal, this court will accord the State the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983).

In order to sustain the appellant's conviction, the State must establish that the appellant knowingly possessed, with the intent to deliver, over 10 pounds but less than 70 pounds of marijuana. Tenn. Code Ann. § 39-17-417(a)(2) & (g)(2)(1997). Furthermore, the appellant's intention to possess a controlled substance for the purpose of sale or delivery may be inferred from the amount of a controlled substance, along with other relevant facts surrounding the arrest. Tenn. Code Ann. § 39-17-419 (1997); see also State v. Mitchell, No. 02C01-9702-CC-00070, 1997 WL 567913, at *6 (Tenn. Crim. App. at Jackson, September 15, 1997).

Agent Stewart testified that the Tennessee Bureau of Investigation lab report revealed that Thomas' suitcases contained a total of 61 pounds of marijuana. Additionally, Agent Riddle stated that an amount as large as the one the police recovered from the appellant and his co-defendants will typically be broken down into smaller amounts for sale. Moreover, Agent Riddle maintained that marijuana is usually sold ounces at a time. Accordingly, the jury could have reasonably found that the appellant intended to deliver over 10 pounds but less than 70 pounds of marijuana. However, the appellant's major contention seems to be that the State produced insufficient evidence to prove his possession of the marijuana. We disagree.

A drug conviction can be sustained upon a finding of either actual or constructive possession. State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). Moreover, as this court has stated:

> Before a person can be found to constructively possess a drug, it must appear that the person has "the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others." In other words, "constructive possession is the ability to reduce an object to actual possession." The mere presence of a person in an area where drugs are discovered is not, alone, sufficient to support a finding that the person possessed the drugs. Likewise, mere association with a person who does in fact control the drugs or property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs.

State v. Brown, 823 S.W.2d 576, 579 (Tenn. Crim. App. 1991)(citations omitted). However, an appellant's "proximity, presence, or association is sufficient when accompanied. . . with testimony connecting the [appellant] with the incriminating surrounding circumstances." United States v. Ratcliffe, 550 F.2d 431, 434 (1977); cf. State v. Jones, No. 02C01-9601-CC-00030, 1996 WL 629199, at *3 (Tenn. Crim. App. at Jackson, October 31, 1996)(finding that where the only evidence

of defendant's possession of drugs was his proximity to their location, that evidence was insufficient to establish constructive possession).

In the present case, Agent Stewart testified that the appellant and Jones acted suspiciously while they waited for Thomas' plane to land. He stated that they often glanced around furtively to see if they were being watched. Additionally, Agent Riddle, Agent Stewart, and Agent Woodham all testified that Thomas, Jones, and the appellant greeted each other with "high fives" when Thomas deplaned. Furthermore, the three men talked, laughed, then walked together to the baggage claim. Thomas and Jones positioned themselves to retrieve the luggage, while the appellant positioned himself at the telephones, pretended to make a call, and set up surveillance. Moreover, Jones told Agent Stewart that he had come from Indiana to "pick up dude [Thomas]." Agent Stewart maintained that Jones and the appellant had arrived at the airport via rental car, and further asserted that the appellant told Agent Stewart that he had rented the car. Additionally, the rental agreement, in someone else's name, and the keys to the rental car were among the appellant's personal belongings. Cf. State v. Brown, No. 03C01-9409-CR-00350, at *3 (Tenn. Crim. App. at Knoxville, July 25, 1995)(stating "the defendant was more than merely present in the area where the cocaine was found and more than just associated with the passenger who tossed the cocaine. The defendant owned the car out of which the passenger tossed the cocaine; he knew the passenger and he was in an area known for drug transactions.")

A reasonable jury could have concluded that the appellant drove with Jones, his half-brother, from Indiana to Nashville, in order to pick up Thomas and retrieve the marijuana for later delivery. The appellant rented the getaway car and served as a lookout in the airport. Furthermore, the appellant lied about not knowing the other two defendants, one of whom was his half-brother. Additionally, the appellant lied about his reason for being in Nashville. He stated that J.J. Carter, a man who had been deceased for more than a decade, had promised him a job. There was sufficient evidence to convict the appellant of possession of marijuana with the intent to deliver. This issue is without merit.

### B. Sentencing

The appellant also contends that "the trial court imposed an excessive sentence in both its length and consecutive nature." The trial court sentenced the appellant, as a Range II offender, to seven years incarceration in the Tennessee Department of Correction. We note that the jury only convicted the appellant of one offense; therefore, the trial court only ordered the appellant to serve one seven year sentence. There were no additional sentences for the trial court to make consecutive. This issue is without merit.

The appellant's main contention is that his sentence is too long. However, other than a broad general statement that his sentence is excessive, the appellant does not specify how the trial court erred in sentencing him, whether the error was by sentencing him in the inappropriate range, by using improper enhancement factors, or by ignoring relevant mitigating factors. Tenn. R. App. P. 27(a)(7) states that an appellant's brief shall contain "[a]n argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefore, including

the reasons why the contentions require appellate relief, with citations to authorities, or appropriate references to the record. . . relied on." <u>See also</u> <u>State v. Killebrew</u>, 760 S.W.2d 228, 231 (Tenn. Crim. App. 1988). The appellant failed to comply with Tenn. R. App. P. 27(a)(7). Therefore, the appellant has waived the issue. <u>Matthews</u>, 805 S.W.2d at 779.

### III.  Conclusion

Based upon the foregoing, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE